UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| NORTH AMERICAN TRUCK & TRAILER, INC., a South Dakota corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DENNIS EAGLE, INC., a Delaware corporation, and DENNIS EAGLE, LTD., a United Kingdom corporation,<br><br>Defendants. | 4:25-CV-04187-KES<br><br><br>ORDER GRANTING RULE 12(B)(2) MOTION TO DISMISS AND DENYING AS MOOT RULE 12(B)(6) MOTION TO DISMISS |

North American Truck & Trailer, Inc. (NATT) filed a lawsuit against Dennis Eagle, Inc. (DEI) and Dennis Eagle, Ltd. (DEL) on September 22, 2025, alleging claims of (1) Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing, (2) Violation of the South Dakota Dealer Act, SDCL § 32-6B-1, et seq., (3) Violation of SDCL § 37-5, et seq., and (4) Fraudulent Inducement. Docket 1. DEL now moves to dismiss NATT's complaint under Rule 12(b)(2) and Rule 12(b)(6). Docket 35. The court issues the following order.

## BACKGROUND

When reviewing a motion to dismiss under Rule 12(b)(2) and Rule 12(b)(6), this court accepts the facts alleged in the complaint as true and construes all reasonable inferences in the light most favorable to the plaintiff. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 646-47 (8th Cir. 2003); *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). The facts as alleged in the complaint are:

DEI is a manufacturer of commercial truck chassis primarily used in the refuse business. Docket 1 ¶ 10. DEI is a Delaware corporation with its principal place of business in South Carolina. *Id.* ¶¶ 5, 10. *Id.* DEL—DEI's parent company—is incorporated and has its principal place of business in the United Kingdom. *Id.* ¶¶ 6, 10.

In February of 2023, NATT and DEI entered into the Dennis Eagle Dealer Sales and Service Agreement (the "Dealer Agreement"). *Id.* ¶ 2; *see also* Docket 1-1. Pursuant to the Dealer Agreement, DEI granted NATT exclusive rights to market and sell DEI's "vocational truck Pro View chassis range" and "parts and accessories" in South Dakota, North Dakota, and Nebraska. Docket 1-1 at 1, 12-13. On July 14, 2023, NATT purchased three DEI Pro View chassis for approximately $210,000 each. Docket 1 ¶ 13. In March of 2025, NATT upfitted one of these chassis with a rear load refuse packer, increasing the chassis' value to approximately $350,000. *Id.* During this same time, NATT "invested heavily into equipment, training, and marketing related to the DEI product line." *Id.*

Prior to entering the Dealer Agreement, Joe McCalip, the Dealer Development Manager at DEI, repeatedly represented DEI's and DEL's "strong financial position" to NATT. *Id.* ¶ 12. McCalip claimed that "DEI was so financially secure that NATT could travel to the U.K. to visit the parent company and its facilities, and DEI would ostensibly 'spare no expense' for hospitality and entertainment for NATT." *Id.* NATT states that McCalip's

2

representations "about DEI's financial strength were a key factor in NATT's decision to enter into the Dealer Agreement." *Id.*

On April 14, 2025, GGG Partners, LLC, on behalf of DEI, sent NATT a letter (the Cessation Letter), stating that DEI, "effectively, intended to terminate the Dealer Agreement due to its planned liquidation and exit from the U.S. market." *Id.* ¶ 14; Docket 1-2. DEI offered a cash rebate of $30,000 per chassis as compensation. Docket 1 ¶ 14; Dockt 1-2 at 1. On April 25, 2025, GGG Partners, LLC, sent a revised letter, adding a provision concerning DEI's obligation under the Dealer Agreement to supply certain parts for ten years after termination. Docket 1 ¶ 15; Docket 1-3 at 1-2.

NATT rejected DEI's offer on June 3, 2025. Docket 1 ¶ 16; Docket 1-4. In NATT's rejection letter, NATT explained that DEI effectively engaged in a "*de facto* termination [of the Dealer Agreement] by announcing Dennis Eagle's dissolution and cessation of U.S. operations." Docket 1-4 at 2. NATT demanded that DEI comply with its obligations under the Dealer Agreement and South Dakota law. Docket 1 ¶ 16; Docket 1-4 at 2-4. NATT additionally alleged that due to DEI's *de facto* termination of the Dealer Agreement, DEI has "significantly disrupted NATT's dealership business for the DEI chassis." Docket 1 ¶ 17. As NATT explains in its complaint, "[d]ue to the uncertainty surrounding warranty, parts, and service support, customers in NATT's limited market are no longer willing to purchase or even seriously consider purchasing DEI trucks. Simply put, the market for DEI's products collapsed immediately upon the delivery of the Cessation Letter." *Id.*

On September 22, 2025, NATT filed suit against DEI and DEL, alleging claims of breach of contract and the implied covenant of good faith, a violation of the South Dakota Dealer Act, a violation of the South Dakota Buy-Back Law against DEI, and fraudulent inducement. *See* Docket 1. Regarding DEI's claim of fraudulent inducement, NATT alleges that "upon information and belief, [DEL] exercised significant control over DEI's operations and strategic decisions including DEI's execution of the Dealer Agreement with NATT." *Id.* ¶ 48. As such, NATT alleges that DEL is "jointly liable for DEI's fraudulent inducement of the Dealer Agreement based on its complete control and oversight of DEI's actions." *Id.* ¶ 50. NATT further alleges that DEL knew McCalip was in South Dakota acting as an agent for both DEI and DEL "in making false statements on their behalf to NATT to induce NATT into a relationship that [DEL] knew would fail and be disastrous for NATT." *Id.* ¶ 49.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps*, 327 F.3d at 647. To do so, the plaintiff must plead sufficient facts "to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation marks omitted). The court may consider not only the pleadings, but also affidavits, exhibits, and other evidence attached in support

4

or opposition to a Rule 12(b)(2) motion. *See id.* at 592. The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction." *Epps*, 327 F.3d at 647.

Federal Rule of Civil Procedure 12(b)(6) provides that the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

DEL moves to dismiss NATT's complaint on two grounds. First, DEL argues that dismissal is warranted under Rule 12(b)(2) because DEL has "no contacts with South Dakota, and the contacts of its subsidiary may not lawfully be imputed to it." Docket 35 at 1. Second, DEL moves to dismiss NATT's complaint under Rule 12(b)(6) because the complaint "fails to state a cognizable, plausible theory of recovery against DEL based upon its own alleged conduct but instead improperly seeks to impute to DEL the conduct of its separate subsidiary, [DEI]." *Id.* The court first addresses DEL's motion under Rule 12(b)(2) before turning to its motion under Rule 12(b)(6).

5

## I.   Rule 12(b)(2)

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073 (8th Cir. 2004) (internal quotation marks omitted). "The South Dakota Supreme Court has interpreted the long-arm statute to confer jurisdiction 'to the fullest extent permissible under the due process clause of the Fourteenth Amendment.' " *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 225 (8th Cir. 1987) (quoting *Ventling v. Kraft,* 161 N.W.2d 29, 30 (S.D. 1968)); *see also Cup O' Dirt, LLC v. Badlands Airtime, LLC,* 2020 WL 475606, at *10 (D.S.D. Jan. 29, 2020). Thus, to determine whether personal jurisdiction over DEL exists, the court only needs to examine whether the exercise of jurisdiction comports with the limits imposed by federal due process. *See Estate of Moore v. Carroll,* 159 F. Supp. 3d 1002, 1007 (D.S.D. 2016).

"Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Fastpath, Inc. v. Arbela Tech. Corp.,* 760 F.3d 816, 820 (8th Cir. 2014); *see also Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction. The first type, general jurisdiction, covers "any and all claims" where a defendant is "essentially at home." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 592 U.S. 351, 358 (2021). For a corporation, this is usually its place of incorporation

6

and principal place of business. *See id.* at 359. The second type, specific jurisdiction, covers a narrower class of claims and exists where a defendant takes "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* (internal quotation marks omitted). Such "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' " *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Further, because the defendant is not "at home" in the forum state, there must be showing that the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Id.* (cleaned up and citation omitted).

To determine whether a nonresident defendant's contacts with the forum state are sufficient, the Eighth Circuit considers "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties." *Fastpath*, 760 F.3d at 821. The first three factors are of "primary" importance, while the last two "carry less weight and are not dispositive." *See Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (quoting *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020)).

Here, the court finds that nature, quality, and quantity of DEL's contacts with South Dakota are insufficient to justify exercising personal jurisdiction over it. DEL is incorporated in the United Kingdom and has its principal place of business in the United Kingdom. Docket 1 ¶¶ 6-7. DEL is not registered to do business in South Dakota, has no properties or employees in South Dakota,

7

and has not entered into any contracts or availed itself of the benefits of doing business in South Dakota. *See* Docket 37-1. While South Dakota has an interest in providing a forum for its residents, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985), the absence of any contacts with South Dakota indicates that DEL is neither at home nor has purposefully availed "itself of the privilege of conducting activities within" South Dakota. *See Ford Motor Co.*, 592 U.S. at 359. Thus, the court finds that NATT has not made a prima facie case demonstrating that DEL alone has sufficient minimum contacts to warrant exercising personal jurisdiction over it.

But rather than rely solely on DEL's contacts with South Dakota to justify its prima face case for personal jurisdiction, NATT argues that this court has personal jurisdiction over DEL based on the actions of its alleged agent, McCalip, and based on the acts of its subsidiary, DEI. Docket 43 at 1, 4-11 ("[V]iewed in the light most favorable to NATT, these facts evidence that DEL's contacts through its agent or subsidiary with South Dakota were not 'random, fortuitous, or attenuated,' but rather were central to a scheme to purposefully avail itself of the privileged of conducting activities in South Dakota."); *see also* Docket 1 ¶¶ 12, 44, 48-51. Thus, to determine whether sufficient minimum contacts exist for this court to exercise personal jurisdiction over DEL, this court needs to consider whether NATT has adequately alleged that a principal-agent relationship existed between DEL and McCalip and/or whether DEI's corporate veil should be pierced.

8

### A.     Whether NATT has sufficiently alleged that a principal-agent relationship existed between DEL and McCalip

Under South Dakota law, an agency relationship is defined as "the representation of one called the principal by another called the agent in dealing with third persons." SDCL § 59-1-1; *see also Bernie v. Catholic Diocese of Sioux Falls*, 821 N.W.2d 232, 240 (S.D. 2012) (quotation and citation omitted). An agency relationship can be either actual or ostensible. *See Am. Prairie Const. Co. v. Hoich*, 560 F.3d 780, 793 (8th Cir. 2009). "Actual authority is created by manifestations from the principal to the agent . . . while ostensible authority is created when the principal allows a third person to believe the agent has authority to act on the principal's behalf." *Id.* "Actual agency requires proof of certain factual elements: 'The manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking, and the understanding of the parties that the principal is to be in control of the undertaking.' " *Babinski Props. v. Union Ins. Co.*, 833 F. Supp. 2d 1145, 1151 (D.S.D. 2011) (quoting *Kasselder v. Kapperman*, 316 N.W.2d 628, 630 (S.D. 1982) (cleaned up)). "To establish ostensible agency, the evidence should indicate that the principal, by its representations or actions, caused a third party to believe that a person was its agent." *Id.*

In its complaint, NATT alleges that DEL knew McCalip "was in [South Dakota] acting as not only the agent for DEI but also as the agent for [DEL] in making false statements on their behalf to NATT to induce NATT into a relationship that [DEL] know would fail and be disastrous for NATT." Docket 1

¶ 49. But NATT has failed to allege that McCalip had actual or ostensible authority to act as DEL's agent.

NATT has not alleged that there was some agreement between McCalip and DEL nor that DEL's words or actions would indicate that an actual agency relationship existed between McCalip and DEL. *See Kasselder*, 316 N.W.2d at 630 (requiring an agreement between the principal and agent for actual authority to exist). Instead, NATT clearly alleges that McCalip was DEI's employee and agent. *See* Docket 1 ¶ 12. Additionally, NATT does not allege that DEL engaged in some conduct that would lead it to believe that McCalip had ostensible authority to act on DEL's behalf. Rather, NATT argues that McCalip's statements about DEL's financial status indicated to NATT that McCalip was DEL's agent. *See* Docket 43 at 12-13; *see also* Docket 1 ¶ 49. But "[o]stensible agency for which a principal may be held liable must be traceable to the principal and cannot be established solely by the acts, declarations, or conduct of an agent." *Am. Prairie Const. Co.*, 560 F.3d at 793-94 (internal quotation marks omitted). As such, because NATT's allegation that McCalip was DEL's agent is based on McCalip's statements and conduct, rather than DEL's conduct, NATT has failed to sufficiently allege that McCalip had ostensible authority to act as DEL's agent. Thus, to the extent NATT seeks to impute McCalip's alleged fraudulent misrepresentations to DEL under an

10

agency theory,[1] the court finds that NATT has failed to make a prima facie case that personal jurisdiction exists over NATT based on McCalip's statements.

### B. Whether NATT has sufficiently alleged that DEI's corporate veil should be pierced

Courts generally do not presume that a parent corporation is liable for the actions of its wholly owned subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). But personal jurisdiction over a nonresident parent corporation can exist "based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Epps*, 327 F.3d at 648-49. Thus, "[i]f the resident subsidiary corporation is the alter ego of the nonresident corporate defendant, the subsidiary's contacts are those of the parent corporation's, and due process is satisfied." *Id.* at 649. The Eighth Circuit has stated that "piercing the corporate veil, if only to establish jurisdiction over [a] parent corporation, is a drastic approach authorized only in the most extreme situations." *Lakota Girl Scout Council v. Havey Fund-Raising Mgmt.*, 519 F.2d 634, 637 (8th Cir. 1975).

---

[1] Additionally, to the extent that NATT seeks to establish personal jurisdiction over DEL on the basis that DEI is DEL's agent, this would fail. "The Eighth Circuit has stated that it is not free to adopt an agency-like finding of personal jurisdiction when a parent/subsidiary relationship is alleged to exist 'because it is inconsistent with our precedent.'" *Burke v. Ability Ins. Co.*, 926 F. Supp. 2d 1056, 1066 (D.S.D. 2013) (quoting *Viasystems, Inc. v. EMB-Papst St. George GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011)). Because this "agency theory" would be inconsistent with Eighth Circuit precedent, the court finds that personal jurisdiction does not exist over DEL on the basis that DEI is DEL's agent. *See Viasystems*, 646 F.3d at 596.

11

"State law is viewed to determine whether and how to pierce the corporate veil." *Epps*, 327 F.3d at 649. South Dakota law provides that "[a] parent corporation is liable for the acts of its subsidiary under the instrumentality exception when (1) the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former; and (2) adherence to the rule of corporate separateness would produce injustices and inequities." *Burke*, 926 F. Supp. 2d at 1063 (internal quotation marks omitted).

The South Dakota Supreme Court provides several factors that courts should consider in determining the level of control necessary to hold a parent company liable. *See Cup O' Dirt, LLC*, 2020 WL 475606, at *8; *Glanzer v. St. Joseph Indian Sch.*, 438 N.W.2d 204, 207 (S.D. 1989). These factors include:

> (a) The parent corporation owns all or most of the capital stock of the subsidiary.
> (b) The parent and subsidiary corporations have common directors or officers.
> (c) The parent corporation finances the subsidiary.
> (d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.
> (e) The subsidiary has grossly inadequate capital.
> (f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.
> (g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.
> (h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.
> (i) The parent corporation uses the property of the subsidiary as its own.
> (j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed. *Glazner*, 438 N.W.2d at 207 (citations omitted). These factors are not exhaustive and need not all be present to conclude that a subsidiary is an instrumentality of a parent corporation. *Id.* But courts "should pierce the corporate veil only upon the strongest evidence of these factors." *Cup O' Dirt, LLC*, 2020 WL 475606, at *8 (internal quotation marks omitted).

Here, NATT argues that the corporate veil should be pierced because it has alleged that "both it and DEI would be financially backed or financed by DEL, . . . that DEL was grossly undercapitalized due to its declared intent to liquidate and its insolvency," and that DEI and DEL share at least four common officers and directors. *See* Docket 43 at 9-10; Docket 44-1; Docket 44-2; Docket 44-3. NATT argues it made such allegations in the complaint, *see* Docket 43 at 10 (citing Docket 1 ¶¶ 12, 14), but the specific allegations NATT cites in its complaint do not support its current contentions that it previously alleged it would be financially backed by DEL or that DEI was grossly undercapitalized, *see* Docket 1 ¶¶ 12, 14. Instead, NATT alleges that McCalip made representations as to DEI's financial stability and that in its Cessation Letter, DEI stated that it intended to terminate the Dealer Agreement due to its planned liquidation. *See id.* But "[s]imply identifying evidence of financial problems is insufficient to show that [DEI] was undercapitalized." *Kan. Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 115 (S.D. 1994) (internal quotation marks omitted). Additionally, because a brief filed in opposition to a motion to dismiss cannot amend or supplement allegations made in a complaint, *see Morgan*

13

*Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989); *Hawse v. Page*, 7 F.4th 685, 691 (8th Cir. 2021), NATT cannot rely upon newly raised arguments and allegations to save insufficient factual allegations made in its complaint.[2]

Additionally, although a parent and subsidiary corporation sharing common officers or directors is a factor under the instrumentality exception, *see Glazner*, 438 N.W.2d at 207, "[a] parent corporation is not liable for the debts of its subsidiary merely because the parent holds the controlling interest or because the two are managed by the same officers," *Epps*, 327 F.3d at 649; *see also Bestfoods*, 524 U.S. at 69 ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."). Further, NATT's allegation that DEL had "significant control over DEI's operations and strategic decisions," without more factual foundation, is insufficient to demonstrate that DEI was merely DEL's alter ego. *See Dever*, 380 F.3d at 1073 ("Mere conclusory statements devoid of a factual foundation do not suffice."). Thus, without factual allegations indicating that DEL

---

[2] It appears that NATT was referring to a separate section of its complaint, where it stated that McCalip's representations "included explicit statements that DEI was financially strong, well-capitalized, and fully backed by a solvent parent company with long-term business prospects." Docket 1 ¶ 44. But this allegation only relates to actions taken by McCalip and DEI, not specific conduct in which NATT alleges DEL engaged. *See id.* Even accepting as true that NATT was told that DEL financially backed DEI and that DEI was "well-capitalized"—these allegations still do not explain how DEL would have such significant control over DEI as to render it a mere instrumentality of DEL.

controlled DEI to such a "degree as to render [DEI] the mere instrumentality" of DEL, the court finds that NATT has failed to sufficiently allege that DEI's corporate veil should be pierced.[3] *See Burke*, 926 F. Supp. 2d at 1063.

Based on the foregoing, the court finds that NATT has failed to establish a prima facie case of personal jurisdiction over DEL based on its piercing the corporate veil or alter ego theory. Thus, because NATT fails to plead sufficient suit-related contacts with South Dakota to support general or specific personal jurisdiction over DEL, the court grants DEL's motion to dismiss under Rule 12(b)(2).

## II.    Rule 12(b)(6)

DEL argues that NATT's claim for fraudulent inducement should be dismissed under Rule 12(b)(6) because NATT "has failed to allege sufficient facts supporting any cognizable theory of recovery." Docket 36 at 11. NATT argues that DEL is liable to it for fraudulent inducement because it has

---

[3] NATT argues that the second prong for piercing the corporate veil is met because "fraudulent misrepresentation claims (like that alleged against DEL in Count IV) have been found sufficient to satisfy this prong." Docket 43 at 10-11. Because the court determined that NATT failed to adequately allege facts supporting the first prong, it need not consider whether NATT raised sufficient allegations under the second prong. *See Brevet Int'l, Inc. v. Great Plains Luggage Co.*, 604 N.W.2d 268, 274 (S.D. 2000) (noting that the court will only consider the second prong if the factors under the first prong are satisfied "in sufficient number and/or degree"). But even if the court were to consider whether NATT established a prima facie case under the second prong, the court is not convinced that NATT has raised sufficient allegations indicating that DEL took some action that abused the corporate form. *See Kan. Gas & Elec. Co.*, 521 N.W.2d 107, 113 (S.D. 1994).

15

"sufficiently pled a viable claim for relief against DEL under principles of agency and piercing the corporate veil." Docket 43 at 11.

Because the court determined that NATT has failed to make a prima facie case of personal jurisdiction over DEL, it need not reach the merits of DEL's Rule 12(b)(6) motion. *See, e.g.*, *Golden Arrow Rsch., LLC v. Ancestry.com DNA, LLC*, 806 F. Supp. 3d 903, 912 (E.D. Mo. 2025) (denying Rule 12(b)(6) motion as moot because the court determined that plaintiff failed to establish a prima facie case of personal jurisdiction over the defendant); *Ecolab Inc. v. IBA, Inc.*, 2023 WL 7091853, at *1 n.2 (D. Minn. Oct. 26, 2023) (reasoning that because court was granting defendant's Rule 12(b)(2) motion, "it would be inappropriate to consider [defendant's] alternative grounds for dismissal" under Rule 12(b)(6)); *Patrick's Rest., LLC v. Singh*, 2019 WL 2869082, at *5 (D. Minn. July 3, 2019) ("If personal jurisdiction is lacking, it would be improper to consider the alternative ground for dismissal; the absence of personal jurisdiction means the absence of judicial power to reach the merits of a case."). Thus, the court denies DEL's Rule 12(b)(6) motion as moot.

## III.   Leave to File an Amended Complaint and Request for Jurisdictional Discovery

NATT requests that if this court grants any part of DEL's motion to dismiss, it be given an opportunity to amend its complaint and a chance to engage in "jurisdictional discovery to obtain the necessary information related to its alter ego theory of liability." Docket 43 at 13-14. DEL argues that this court should deny NATT's request to conduct jurisdictional discovery because

NATT "has offered nothing but speculation that any of the *Glazner* alter ego/veil piercing factors are satisfied." Docket 45 at 9-10.

Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading . . . with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Under Rule 15(a), "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a), and "[a] decision whether to allow a party to amend [a] complaint is left to the sound discretion of the district court," *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008). Denying a motion to amend "is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Hillescheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted).

Under Local Rule 15.1, however, NATT should have filed a separate motion to amend and attached the proposed amended complaint, *see* D.S.D. CIV LR 15.1, rather than make such a request in its briefing, *see* Fed. R. Civ. P. 7(b) (stating that requests for court action must be made by filing a motion). As such, because NATT's request for leave to file an amended complaint did not comply with Local Rule 15.1, its request is denied.

The court also denies NATT's request to conduct jurisdictional discovery. When considering requests for jurisdictional discovery, "[c]ourts look to decisions under Rule 56 for guidance in determining whether to allow discovery on jurisdictional facts." *Johnson v. United States*, 534 F.3d 958, 965 (8th Cir.

17

2008). To obtain discovery under Rule 56(f), "a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Id.*; *see also* Fed. R. Civ. P. 56(f).

Here, NATT requests such discovery "to obtain the necessary information related to its alter ego theory of liability," but it fails to specifically identify what discovery it would be seeking to provide support for its alter ego or piercing theory. *See* Docket 43 at 13-14; *see also Jahner v. Kumo Tire U.S.A, Inc.*, 2020 WL 4932832, at *17 (D.S.D. Aug. 24, 2020) (granting plaintiff's request for jurisdictional discovery, which outlined specific discovery requests, because certain facts were unknown). And as the Eighth Circuit has explained, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Viasystems, Inc.*, 646 F.3d at 598 (internal quotation marks omitted). Beyond its identification of common officers and directors between the two corporations, *see* Docket 44-1; Docket 44-2; Docket 44-3, NATT has only offered speculation and conclusory allegations to justify asserting personal jurisdiction over DEL, *see* Docket 1 ¶ 50. As such, the court denies NATT's request to conduct jurisdictional discovery.

## CONCLUSION

Based on the foregoing, it is

ORDERED that DEL's motion to dismiss under Rule 12(b)(2) (Docket 35) is granted and DEL's motion to dismiss under Rule 12(b)(6) (Docket 35) is denied as moot. NATT's claim of fraudulent inducement against DEL is dismissed without prejudice.

Dated May 12, 2026.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE